THORNHILL & RICHARDSON *v.* JAMES T. FORD.

**Bills and Notes—Assignment Invests Assignee with Equitable Right to
Benefit of Lien—Written Transfer of Mortgage or Deed of Trust.**
The assignee of a note is invested with the equitable right to avail
himself of the benefits of any lien the assignor may have held to
secure the payment thereof and a written transfer passes no greater
interest in a mortgage or deed of trust by reason of its being men-
tioned in the writing, than it would have passed, if it had been omit-
ted.

**Bills and Notes—Fraud or Deceit—Maker's Estate Must be Prosecuted to
Insolvency—Proof of Insolvency—Return of Nulla Bona.**
An action cannot be maintained against the assignee of a note,
where he is free from fraud or deceit, until the estate of the maker
is prosecuted to insolvency, and no proof short of that furnished by a
judicial determination or a return of nulla bona will suffice.

APPEAL FROM LOUISVILLE CHANCERY COURT.

January 18, 1872.

OPINION BY JUDGE LINDSAY:

The assignment of the note to Watkins, invested him with the
equitable right to avail himself of the benefit of any liens the
assignor, Ford, may have held to secure its payment. The writ-
ten transfer passed to him no greater interest in the mortgage

or deed of trust by reason of its being mentioned in the writing, than it would have passed if it had been omitted. Appellants allege that the only consideration for the payment of the five thousand dollars, or any part thereof, was the assignment of the lien on the real estate and the deed of trust, but in the conclusion of their petition they essentially modify this allegation by insisting that inasmuch as "the said note and transfer are of no value" they have been damaged in the sum of five thousand dollars, with interest, etc. Unless the note formed some part of the consideration the fact that it was worthless could not entitle them to recover damages. That it did form a material part of the consideration is made manifest by the testimony of the witness Watkins, who states that "the consideration for the note transferred purported to have been secured by the deed of trust was five thousand dollars and that amount was paid by me in cash when Ford signed the transfer." Again, "the transfer was intended to convey a note of 'Crenshaw for about six thousand dollars represented by said Ford to be secured by deed of trust." He also states that Ford added to the writing prepared by Booley & Simral, the stipulation that he would not be responsible on his assignment beyond the sale under the deed of trust, that if the land did not bring the amount of the note transferred, he was not to be called on for the difference. If the sole consideration was the transfer of the lien, or deed of trust, and the note was merely passed to enable the purchasers to enforce this lien, it would have been absurd for Ford to be requiring them to agree that they would not hold him bound on his assignment thereof. Throughout his entire deposition this witness speaks of the purchase of the note, and not of its incident, the deed of trust. The transfer was made to him, he was the intimate friend and confidant of Richardson, he accompanied him to Louisville to negotiate the purchase. He must be presumed to understand what was sold and for what the five thousand dollars were paid. It being established that this assignment of the note constituted part of the consideration, this action cannot be maintained, unless Ford was guilty of deceit in making representations known by him to be false and which were relied upon by Watkins and Richardson relative to the existence of the deed of trust lien. It is manifest that the estate

of Crenshaw has not been prosecuted to insolvency, and it is proved by Alcorn, that while appellants held the assigned note which they do not pretend has been paid, that Richardson himself paid to Alcorn as attorney for said estate the sum of five thousand dollars. It therefore cannot be insisted that nothing could have been realized on the note, even if the appellants could be allowed to establish such facts, by any proof short of that furnished by a judicial determination of the insolvency, of Crenshaw's estate or a return of *nulla bona*.

The evidence does not justify the conclusion that Ford was guilty of fraud in making the sale to Watkins. Appellants sought him out at his home, when confined to his bed by sickness. It is not made to appear that he knew anything whatever of the execution by Hunter, the trustee, of the paper directing the clerk of Calloway county to endorse on the margin of the deed book in which the trust deed was recorded, the release of the lien, nor of any arrangement made by his partner Downing with Crenshaw's administrator that such release should be made. It may be fairly implied from everything presented by the records that Richardson who had more interest in the Crenshaw lands than Ford was better acquainted with the condition of this title. It will be observed that whilst appellants charge in their petition that they relied upon the statements of Ford, and the recital in his transfer to the effect that the trust lien was then in existence, they failed to state that they were not apprised of the existence of the paper executed by Hunter, the trustee, and the letter written by Downing. These papers were executed and written on the 22d day of February, 1861, only four days after appellants had purchased the Crenshaw lands. They were addressed to the probate clerk of the county in which their title was recorded or required by law to be recorded. There is no reason why this clerk who seems also to have been Crenshaw's administrator, should not at once have entered the release as directed, and remove the cloud from the title of appellants unless there was some misunderstanding between the parties, that the release was not to become effectual until some other arrangement was consummated. Whether or not Richardson was a party to this arrangement can not now be ascertained by reason of the death of the actors, but as the lien was upon

land which he had first purchased, and as he was interested in having it removed, as he was indebted to Crenshaw's estate in an amount exceeding the lien debt, it is but reasonable to conclude that he must have known something about a transaction in which he was thus interested. It is true that Alcorn says that Richardson was surprised when he told him of this release. He does not state how the surprise was manifested, and it is remarkable that he made no mention of Richardson, saying that he knew nothing of the existence of the release before that time. Considering all the facts presented by the record, we incline to the conclusion that the compromise of this suit with Crenshaw's representatives rendered the note and assignment of the trust deed valueless to appellants, and that this is the real reason why they desire a rescission of their contract of purchase from Ford. Feeling assured that appellee was guilty of no deceit or fraud in the transaction, we are of opinion that no recovery can be had against him on his contract of assignment under existing circumstances.

Wherefore the judgment of the chancellor must be affirmed.

*Bodley & Simrall, for appellant.*

*Caldwell & Bramblett, for appellee.*